J-A04032-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| MARTIN A. BABOOLAL | : | |
| | : | |
| Appellant | : | No. 1611 EDA 2023 |

Appeal from the Judgment of Sentence Entered May 4, 2023
In the Court of Common Pleas of Monroe County Criminal Division at
No(s):  CP-45-CR-0000475-2022

BEFORE:   STABILE, J., McLAUGHLIN, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED JULY 17, 2024**

Appellant, Martin A. Baboolal, appeals the judgments of sentence entered by the Monroe County Court of Common Pleas on May 4, 2023, as made final by the denial of his post-sentence motion on May 25, 2023.[1]  A jury and the trial court collectively found him guilty of forty separate offenses in connection with a police high-speed chase of Appellant as he was driving under the influence of a controlled substance.  He challenges the sufficiency of the evidence and the trial court's grant of a joinder motion permitting a

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellant incorrectly identified the order on appeal in his notice of appeal as the order that denied his post-sentence motion.  ***See Commonwealth v. Shamberger***, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (recognizing that, "[i]n a criminal action, [an] appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions") (citation omitted).  Accordingly, the above caption and the docket were corrected to reflect that Appellant's appeal lies from the May 4, 2023 judgments of sentence.

joint trial for the charges in this case along with charges in connection with a separate high-speed flight from police that happened on the day before the high-speed chase that resulted in the charges in the instant case. Upon careful review, we reverse two of Appellant's convictions, affirm the remaining convictions, vacate the judgments of sentence, and remand for resentencing.

As of September 13, 2021, there was an outstanding arrest warrant for Appellant that had been issued through the Pocono Township police department and bail had been revoked in a criminal matter resulting in an additional pending warrant for him. N.T. 12/14/22, 51, 54-55. Between 8:00 a.m. and 9:00 a.m. that day, Trooper Christopher Gaetano was sitting alone in a marked patrol vehicle on Interstate 80 near mile marker 298. *Id.* at 77-78. His attention was drawn to a 2005 Nissan Altima because it had a dark window tint on its sides that constituted a violation of the Vehicle Code. *Id.* at 78; N.T. 12/16/22, 21. Trooper Gaetano looked up information concerning the car by searching for the car's license plate number in his computer system. N.T. 12/14/22, 78. He discovered that it was registered to a Jennifer Bush, whom Trooper Gaetano had arrested weeks earlier because of a federal warrant in Texas concerning drug charges. *Id.* at 78. The information returned to the trooper also indicated that Appellant could be affiliated with that vehicle. *Id.* at 79. The returned information also made Trooper Gaetano aware of the active warrants for Appellant. *Id.* at 79, 89-90. Trooper Gaetano began to pursue the car and saw it travel over three traffic lanes in an unsafe manner. *Id.* at 79.

Trooper Gaetano pursued the Nissan onto State Route 611 towards the Sanofi area. N.T. 12/14/22, 79. Using a speedometer, he "clocked" the car as traveling 54 miles-per-hour in a 40 mile-per-hour zone and saw it engage in numerous traffic violations. *Id.* at 79-80. At that point, the trooper engaged his lights and sirens. *Id.* at 80. As the trooper caught up with the car while it was engaged in an illegal U-turn, the trooper was able to see Appellant at the wheel of the car through its front windshield. *Id.* at 80. At points in the pursuit, Trooper Gaetano's car exceeded one hundred miles per hour and reached a high speed of one hundred and twenty miles per hour. *Id.* at 83-84. After reaching Paradise Trail Road, Trooper Gaetano lost sight of Appellant's car. *Id.* at 85-86. Following that pursuit, a new arrest warrant was filed for Appellant.[2] *Id.* at 51.

The next day, troopers planned to serve a warrant on Appellant at several locations. N.T. 12/14/22, 67, 174-75. Between 10:00 a.m. and 11:00 a.m. on September 14, 2021, troopers responded to a residence at 103 Wolbert Farm Road in East Stroudsburg Township where they believed that Appellant was staying. *Id.* at 62-63, 175. There, they saw Appellant in the driver's seat of a Nissan Altima that was the same model that Trooper Gaetano

_____

[2] Charges in connection with the high-speed pursuit on September 13, 2021, were docketed at CP-45-CR-0002421-2021. N.T. 7/8/22, 4, 9. A motor vehicle recording from Trooper Gaetano's patrol car reflected that pursuit starting from thirty seconds before the trooper initiated his lights and sirens. N.T. 12/14/22, 81-82.

- 3 -

had pursued on the preceding day.[3] *Id.* at 100, 175-77; N.T. 12/16/22, 19-20. Trooper Justin Siekierka, outside his patrol car, started giving verbal commands to Appellant, and, in response, Appellant put the Nissan into reverse and fled with multiple troopers in patrol cars pursuing him. N.T. 12/14/22, 63, 100, 191.

Appellant used his emergency brake to slide onto Mill Creek Road towards East Stroudsburg Borough and then the police chase continued onto Fawn Road in East Stroudsburg Borough going towards the Paradise Township/Brushy Mountain area. N.T. 12/14/22, 62-63, 101, 103. On Fawn Road, Trooper Jeffrey Miller initiated a pit maneuver[4] to try to stop Appellant. *Id.* at 63, 101, 104, 178. While the pit maneuver successfully put the Altima in a ditch, Appellant was able to reverse the car out of it. *Id.* at 101. Trooper Miller exited his patrol car and ran in front of the Altima. *Id.* Appellant almost struck Troopers Miller and Siekierka, who were on foot outside their patrol cars, and Appellant struck a patrol car containing Trooper Corey Gilroy before continuing to flee on Fawn Road towards the Paradise Township/Brushy Mountain area. *Id.* at 62-63, 101-02, 120-21, 178, 185-86; N.T. 12/16/22,

_____

[3] One difference was that the car – which originally had a metallic teal color – appeared to have been spray-painted black in between the high-speed chase on the day before and the troopers' discovery of the car on September 14th. N.T. 12/16/22, 19-20.

[4] Trooper Miller described a "pit maneuver" at trial as a "precision immobilization technique where you take the front right quarter panel of your vehicle and you do a right quarter turn into the left rear of the vehicle you're trying to stop." N.T. 12/14/22, 101. The aim of this maneuver is to get the other vehicle to spin out into a ditch or have its engine stall. *Id.* at 101, 128.

30-32. Troopers Gilroy and Siekierka pursued Appellant at speeds between eight and ninety miles per hour. N.T. 12/14/22, 183. Around the Brushy Mountain area, the troopers lost sight of Appellant. *Id.* at 62, 64, 102, 117, 178.

Trooper Alexander Rankovich related a report to his fellow officers from a bystander that there was a vehicle erratically driving northbound on Dancing Ridge Road. N.T. 12/15/22, 111. The troopers thereafter responded to Snow Hill Road in the Canadensis/Paradise Township area in response to a report of erratic driving. N.T. 12/14/22, 62, 64, 179. Troopers Siekierka and Gilroy, traveling in the same patrol car, then reinitiated the pursuit after spotting Appellant's car in that area. *Id.* at 64. Troopers Thomas Rehberg and Ryan Hari joined the pursuit at that point in a separate patrol car. N.T. 12/15/22, 40; N.T. 12/16/22, 7. Trooper Gilroy, upon passing Appellant traveling in the opposite direction, veered toward the rear of Appellant's car to perform a variation of a pit maneuver and his patrol car ended up going into the woods. N.T. 12/14/22, 180, 197; N.T. 12/15/22, 40. Troopers Rehberg and Hari lost sight of Appellant as they went to check on Troopers Siekierka and Gilroy. N.T. 12/15/22, 40.

The pursuit continued to the Clark Road area and then onto Cranberry Creek Road near Paradise Township. N.T. 12/14/22, 62, 65; N.T. 12/15/22, 43, 59. Trooper Samantha Doherty joined the pursuit in that area, but her car was disabled with a broken axle after she attempted a pit maneuver on Appellant's car on Henry's Crossing Road. N.T. 12/14/22, 64, 93-95. Trooper

Rankovich then caught up to Appellant's car coming at him in the opposite direction in the same lane of traffic. N.T. 12/15/22, 113. Trooper Rankovich tried to disable Appellant's car by hitting it head on. *Id.* Afterwards, Trooper Rankovich got out his car and requested Appellant to put his hands up. *Id.* Appellant instead put his car in reverse, backed away, and then drove around Trooper Rankovich. *Id.*

At that location, Troopers Thomas Rehberg and Ryan Hari struck Appellant's car nearly head on to disable it. N.T. 12/15/22, 45, 53-54; N.T. 12/16/22, 10. Trooper Rehberg was hit on his head with an airbag and Trooper Hari slammed his head on the patrol car's B pillar[5] and airbag. N.T. 12/15/22, 45; N.T. 12/16/22, 10. Their vehicle struck the separate patrol car of Trooper Robert Nardelli after striking Appellant's car. N.T. 12/15/22, 50, 62-63. After Trooper Rehberg exited his patrol car, he fell, suffered from respiratory distress, and needed to be taken to a hospital by ambulance. N.T. 12/14/22, 118; N.T. 12/15/22, 45-46. Officer Hari temporarily lost consciousness after the collision. N.T. 12/15/22, 10-11. As Appellant's car was then moving in reverse, Officer Rankovich rammed its rear with the trooper's marked SUV, finally disabling Appellant's car and pinning it against Trooper Whalen's car. *Id.* at 114, 119, 122, 125-26. Trooper Nardelli, Trooper Rankovich, and Trooper Whalen removed Appellant out of his car through the driver's side window. N.T. 12/14/22, 60, 211; N.T. 12/15/22,

_____

[5] A "B pillar" is the vertical support in a car dividing the front and rear passenger sections of a car.

65-66, 116-17. Appellant had traveled between ten and fifteen miles during the pursuit. N.T. 12/16/22, 21.

After Appellant was thereafter transported to the state police barracks, the troopers recovered, from his person, $5,000 in cash, some jewelry, key rings, and a folded-up dollar bill that contained a powdery substance along with a straw. N.T. 12/14/22, 204-05. Testing of the folded one-dollar bill later revealed that it contained 0.013 grams of eutylone, which is a substitute of cathinone, a stimulant commonly known as "bath salts," and a Schedule I narcotic. *Id.* at 166-68, 204-05. Appellant made statements to the troopers that he had smoked marijuana and used methamphetamines in the past couple days. *Id.* at 208.

Based on Appellant's constricted pupils and his erratic behavior, that included statements that his car was being remotely controlled and that he was not driving, the assigned detective, Jonathan Bailey, believed that he was under the influence of a controlled substance. N.T. 12/14/22, 206. At 3:35 p.m., a blood draw was taken from Appellant at the emergency room of St. Luke's Hospital. *Id.* at 151, 155-56, 206-10. The blood sample tested positive for methamphetamine and amphetamine. N.T. 12/15/22, 12.

Troopers Hari and Rehberg received medical assistance for their injuries sustained in the pursuit of Appellant. N.T. 12/15/22, 24-29. Trooper Hari exhibited signs and symptoms of a concussion and a neck strain and subsequently had lingering effects including nerve damage and muscle pain on the right side of his neck. *Id.* at 24; N.T. 12/16/22, 10, 13. Trooper

Rehberg collapsed and sustained numbness to his left arm and face, a concussion, a possible loss of consciousness, and pain on the left side of his neck. N.T. 12/15/22, 28, 45-48.

Auto repair estimates later produced at trial reflected damages to the six police vehicles used in the police chase as amounting to $64,992.20 in total. N.T. 12/14/22, 97, 140-44; N.T. 12/15/22, 49, 72, 109.

The Commonwealth filed a pre-trial motion pursuant to Pa.R.Crim.P. 582 seeking a joint trial of the charges in the instant case, arising from the events on September 14, 2021, and the charges in connection with Trooper Gaetano's pursuit of Appellant on the preceding day. Motion for Joinder, 5/16/22, ¶¶ 1-4. The Commonwealth alleged that joinder was appropriate because the evidence of the offenses in each of the cases would be admissible in the other one, the jury could easily separate the evidence in the two cases and avoid confusion, and Appellant would not suffer undue prejudice. *Id.* at ¶¶ 10-11. After Appellant filed a brief in opposition to the joinder motion, alleging overwhelming prejudice from a joint trial, Brief in Opposition to Joinder, 6/9/22, 3-5, the trial court granted the motion to the extent that it allowed joinder of the charges arising from the events on September 13-14, 2021.[6] N.T. 7/8/22, 27-30, 35.

_____

[6] The joinder motion also addressed a third case for a joint trial, but the trial court held the joinder issue for that case under advisement and then never appeared to have issued a ruling as to that case in the certified record for this appeal. The charges for that additional matter were docketed at CP-45-CR-
*(Footnote Continued Next Page)*

Appellant proceeded to be tried by a jury on December 14-16, 2022. The Commonwealth's evidence included testimony from police witnesses, evidence assessors, and treating medical personnel,[7] and exhibits including motor vehicle recordings ("MVR") from all but one of the troopers' vehicles involved in the September 14th pursuit.[8] The defense declined to present any evidence. N.T. 12/16/22, 45. During the jury's deliberation, the Commonwealth presented testimony from Detective Bailey for a summary bench trial portion of the proceeding during which the detective established that Appellant's driver license had been suspended as of September 13-14, 2021, and that he had three prior convictions for driving while operating privileges are suspended or revoked. N.T. 12/16/22, 136-38.

_____

0000056-2021, and involved offenses allegedly committed on October 20, 2020. N.T. 7/8/22, 4, 9. The trial court advises us that its order denying joinder with respect to that case was only filed in that third case. Trial Court Opinion, 8/22/23, 5 n.2. A direct appeal for CP-51-CR-0000056-2021 is currently pending with this panel at 600 EDA 2023.

[7] The Commonwealth's witnesses included Detective Bailey, Trooper Gaetano, Trooper Miller, Steve Jurasits (an auto collision repair assessor), Amanda Reither (a nurse), Lauren Force (a Pennsylvania State Police forensic scientist), Trooper Siekierka, Caitlyn Brophy (a Pennsylvania State Police blood drug analyst), Dr. Danielle Dietrick (an emergency physician), Trooper Rehberg, Trooper Nardelli, Trooper Doherty, Trooper Rankovich, and Trooper Hari.

[8] *See* N.T. 12/14/22, 98, 103 (Trooper Miller's MVR); N.T. 12/14/22, 180-85, 199 (Troopers Siekierka and Gilroy's MVR); N.T. 12/15/22, 43-45 (Troopers Rehberg and Hari's MVR); N.T. 12/15/22, 59-68 (Trooper Nardelli's MVR); N.T. 12/15/22, 96 (Trooper Doherty's MVR); N.T. 12/15/22, 115-16 (Trooper Rankovich's MVR); N.T. 12/16/22, 22-26 (cross-examination about the absence of an MVR from Trooper Whelan's car).

The jury found Appellant guilty of two counts of aggravated assault – attempt to cause serious bodily injury or causes injury with extreme indifference,[9] two counts of aggravated assault – attempt to cause or causes serious bodily injury to designated individuals,[10] seven counts of aggravated assault – attempt to cause or causes bodily injuries to designated individuals,[11] nine counts of recklessly endangering another person,[12] six counts of accidents involving damage to attended vehicle or property,[13] two counts of aggravated assault by vehicle while driving under the influence,[14] and single counts of criminal mischief – damage to property (more than $5,000 in value),[15] institutional vandalism (loss exceeding $5,000),[16] driving under the influence of a controlled substance – impaired ability (fourth or subsequent offense),[17] knowing or intentional possession of a controlled

---

[9] 18 Pa.C.S. § 2702(a)(1).

[10] 18 Pa.C.S. § 2702(a)(2).

[11] 18 Pa.C.S. § 2702(a)(3).

[12] 18 Pa.C.S. § 2705.

[13] 75 Pa.C.S. § 3743(a).

[14] 75 Pa.C.S. § 3735.1(a).

[15] 18 Pa.C.S. § 3304(a)(5).

[16] 18 Pa.C.S. § 3307(a)(3).

[17] 75 Pa.C.S. § 3802(d)(2).

substance,[18] possession of drug paraphernalia,[19] fleeing or attempting to elude a police officer,[20] and flight to avoid apprehension.[21]  N.T. 12/16/22, 151-57, 165.[22]

With respect to the summary offense charges in this case, the court found Appellant guilty of driving while operating privileges are suspended or revoked, careless driving, disregarding traffic lanes, ignoring duties at a stop sign, and failing to drive at a safe speed.[23]  N.T. 12/16/22, 143, 165; Order, 12/16/22, ¶ 2.

_____

[18] 35 P.S. § 780-113(a)(16).

[19] 35 P.S. § 780-113(a)(32).

[20] 75 Pa.C.S. § 3733(a).

[21] 18 Pa.C.S. § 5126(a).

[22] As for the charges at CP-45-CR-0002421-2021, arising from the events of September 13, 2021, the jury found Appellant guilty of fleeing or attempting to elude a police officer and recklessly endangering another person.  N.T. 12/16/22, 158-59, 163.  *See* 75 Pa.C.S. § 3733(a) and 18 Pa.C.S. § 2705, respectively.  With respect to the summary charges in that case, the court found Appellant guilty of exceeding the maximum speed limit by nine miles per hour, careless driving, reckless driving, driving with a suspended license, following too closely, disregarding traffic lanes, improper sunscreening, improper left turn – lane design, and unsafe U-turn.  N.T. 12/16/22, 140-41, 163-64.  *See* 75 Pa.C.S. §§ 3362(a)(3), 3714(a), 3736(a), 1543(b)(1)(i), 3310(a), 3309(1), 4524(e)(1), 3331(d)(1), 3332(a), respectively.  Appellant did not file a notice of appeal in that case.

[23] 75 Pa.C.S. §§ 1543(a), 3714(a), 3309(1), 3323(b), 3361, respectively.

At a deferred sentencing hearing, the court imposed an aggregate term of 28.5 to 61 years' imprisonment, to be served to consecutive to an aggregate prison term of 4.67 to 9.5 years that Appellant had already received at CP-45-CR-0000056-2021, plus $300 in fines for the summary offenses, restitution in the amount of $61,075.12, and court costs. N.T. 5/4/23, 59-67; Order, 5/4/23, 1-7. With leave of court, Appellant filed a *nunc pro tunc* post-sentence motion, challenging the discretionary aspects of his sentence and the sufficiency of the evidence for his aggravated assault convictions. Post-Sentence Motion, 5/22/23, 1-4. Following the denial of the post-sentence motion, Appellant timely filed a notice of appeal and a court-ordered concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Order Denying Post-Sentence Motion, 5/25/23; Notice of Appeal, 6/6/23; Rule 1925 Order, 7/6/23, 1; Rule 1925(b) Statement, 7/14/23, 1-2.

Appellant presents the following questions for our review:

1.    Did the trial court make an error of law when it allowed other cases to be joined for trial, causing prejudice to [Appellant]?

2.    Did the trial court make an error of law when it denied [Appellant's] post-trial motion for judgment of acquittal notwithstanding the verdict in that the aggravated assault charge required [Appellant] to have caused serious bodily injury, and the evidence did not show, nor did the Commonwealth prove, that such injuries had occurred or that [Appellant] intended or recklessly caused them?

Appellant's Brief at 13 (unnecessary capitalization and suggested answers of the lower court omitted).

In the first issue, Appellant claims that the trial court erred by granting the Commonwealth's motion for a joint trial on the charges at CP-45-CR-0002421-2021 and CP-45-CR-0000475-2022, concerning the police pursuits on September 13-14, 2021. Appellant's Brief at 19-25. He argues that there was "nothing unique" about the car chases to make them signature crimes for purposes of simultaneous admission of the evidence of the two cases under the common scheme, plan, or design exception to Pa.R.E. 404(b). Appellant's Brief at 21. Even assuming that the evidence of each pursuit case was admissible into the other case, he maintains that the evidence was more prejudicial than probative because it would allow the jury to infer that he had a propensity for bad acts. Appellant's Brief at 22-25.

The trial court advises us that the joinder was appropriate where there was a temporal connection between the two cases and a shared motive in each case, *i.e.*, the intent to flee to avoid arrest. Trial Court Opinion, 6/22/23, 9-10. It asserts that the evidence of the September 13th pursuit was admissible in the case concerning the September 14th pursuit because his flight in both cases along with the countermeasures he took in between incidents (namely, the spray-painting of his car) were evidence of his consciousness of guilt. *Id.* at 10. In any event, the court asserts that the evidence of the two cases were also admissible under the unenumerated *res gestae* exception to Pa.R.E. 404(b) because the events on both dates formed the history and natural development of the two cases that were tried together.

Trial Court Opinion, 6/22/23, 13. For these multiple reasons, the court notes that the probative value of the evidence of the two cases outweighed the prejudicial impact of the joint trial and suggested that there was a lack of any prejudice because "the evidence as to each incident was easily separable by the jury into different incidents on different days," and thus "there was no danger of the jury confusing the evidence." *Id.*

"[W]hether or not separate indictments should be consolidated for trial is within the sole discretion of the trial court and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." *Commonwealth v. Kurtz*, 294 A.3d 509, 531 (Pa. Super. 2023), *quoting Commonwealth v. Cousar*, 928 A.2d 1025, 1037 (Pa. 2007) (citation omitted).

Pursuant to Rule of Criminal Procedure 582, "[o]ffenses charged in separate indictments or informations may be tried together if … the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so there is no danger of confusion." Pa.R.Crim.P. 582(A)(1)(a). Moreover, under Rule 583, the trial court "may order separate trials of offenses or defendants, or provide other appropriate relief, if it appears that any party may be prejudiced by offenses or defendants being tried together." Pa.R.Crim.P. 583.

With respect to the initial question regarding whether the evidence of the offenses in the two police pursuit cases would be admissible in a separate

trial for the other, we note that generally, "[e]vidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Pa.R.E. 404(b)(1). At the same time, "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident" and where "the probative value of the evidence outweighs its potential for unfair prejudice." Pa.R.E. 404(b)(2).

Here, Appellant's argument refutes the applicability of the common plan or scheme exception to Rule 404(b). Appellant's Brief at 21-22. At the same time, he makes no effort to distinguish other grounds for a Rule 404(b) exception that would cause the evidence in each of his police pursuit cases to be admissible in the other case. For instance, the court noted below that evidence of the events of the September 13th pursuit case were admissible in the September 14th pursuit case to show Appellant's motive to flee on the second date and generally to show the *res gestae* for the second date of crimes. **See** N.T. 7/8/22, 26-28. The court also noted that both cases were evidence of "consciousness of guilt," but, in this context, the court seemed to be referring to the Rule 404(b) exception for absence of mistake. **Id.** at 28. Namely, Appellant fled on both dates with the intent to avoid apprehension because he was evidently aware that he was wanted for arrest, and the spray-painting of the car between the two pursuits informed the jury that the flight

was intentional on both days. Finding these grounds for admissibility were based on sound reasoning, which Appellant does not bother to challenge, we find no abuse of discretion with respect to the initial threshold question for the joinder issue. *See Commonwealth v. DeHart*, 516 A.2d 656, 661 (Pa. 1986) (no abuse of discretion in consolidating the trial for DeHart's escape with subsequent violent crimes committed in furtherance of the escape); *Commonwealth v. Torres*, 177 A.3d 263, 277 (Pa. Super. 2017) (holding that the denial of severance of gun and drug possession case and an assault of police officers case was within a trial court's discretion where the drug evidence provided a motive for Torres's flight from and subsequent violent resistance to the police).

The next question for our review of the exercise of discretion for the joinder under Rule 582 is whether the evidence in each of the two cases was "capable of separation by the jury so there [wa]s no danger of confusion." Pa.R.Crim.P. 582(A)(1)(a). Appellant makes no arguments with respect to this question. He perhaps declines to do so because the police pursuits happened on separate but consecutive dates and the facts for the September 13th pursuit case were solely supported by Trooper Gaetano, who had no apparent involvement in the September 14th pursuit case. With these circumstances, there was no question that there was no danger that the jury would be confused by the joinder. *See Commonwealth v. Collins*, 703 A.2d 418, 423 (Pa. 1997) ("[w]here a trial concerns distinct criminal offenses that

are distinguishable in time, space and the characters involved, a jury is capable of separating the evidence") (citation omitted).

The last question we must resolve for this joinder issue is whether Appellant was unduly prejudiced by the consolidation of the two police pursuit cases. For purpose of this analysis, prejudice "is not simply in the sense that [the] appellant will be linked to the crimes for which he is being prosecuted, for that sort of prejudice is ostensibly the purpose of **all** Commonwealth evidence." **Collins**, 703 A.2d at 423 (citation omitted; emphasis in original). Instead, prejudice is established where the evidence only showed the appellant's "propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence." **Id.** (citation omitted). Appellant maintains that he was prejudiced by the joinder because it would focus the jury's attention on a propensity for bad acts, but that combined evidence did not simply show his propensity to commit crimes and the evidence was not unnecessarily cumulative. The evidence of the separate but interrelated police pursuits on September 13th and September 14th were sufficiently related in nature and informed the jury of Appellant's motive and the absence of mistake for his separate flights from apprehension in each of the two criminal episodes. Accordingly, we find that joinder did not unduly prejudice Appellant and there was no abuse of discretion in the trial court's grant of the Commonwealth motion to join the charges in the two cases. *See Commonwealth v. Lark*, 543 A.2d 491, 500 (Pa. 1988) ("[This

was a] series of crimes committed by the [appellant] which were all related. He created the sequence of events and cannot fairly now demand that the … matters be severed and tried in separate trials.").

In the second issue presented, Appellant challenges the denial of his motion for judgment of acquittal, that was included in his post-sentence motion, in which he claimed that the evidence was insufficient for his aggravated assault convictions. Appellant's Brief, 25-31; Post-Sentence Motion, 5/22/23, ¶¶ 11-18. In total, he was convicted of eleven counts of aggravated assault: two counts under 18 Pa.C.S. § 2702(a)(1); two counts under 18 Pa.C.S. § 2702(a)(2); and seven counts under 18 Pa.C.S. § 2702(a)(3). He was also convicted of two counts of aggravated assault by vehicle while driving under the influence in violation of 75 Pa.C.S. § 3735.1(a). Instantly, he argues that he never intended to harm the troopers, his only intention was to "get away" from them, and that, for Troopers Hari and Rehberg, who were the focus of the counts under 18 Pa.C.S. § 2702(a)(1)-(2) and 75 Pa.C.S. § 3735.1(a), neither of those troopers sustained serious bodily injury. Appellant's Brief at 26-31. He maintains that if the officers injured themselves by slamming their patrol cars into his car, then he could not be liable under a theory of transferred intent. *Id.* at 28 ("If the officers suffered injuries due to their own actions in slamming their cars into [Appellant's]— when such action was a decision of the officers themselves—then it is hard to imagine how that intent can be transferred to [Appellant]."). Given a

supposed lack of sufficient evidence to sustain the aggravated assault charges, Appellant alleges that the trial court erred by not granting his motion for judgment of acquittal.

"A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." *Commonwealth v. Emanuel*, 86 A.3d 892, 894 (Pa. Super. 2014) (citation omitted). We apply the following standard of review to sufficiency claims which arise in the context of a motion for judgment of acquittal:

> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. ***When reviewing a sufficiency claim[,] the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.***

*Commonwealth v. Stahl*, 175 A.3d 301, 303-04 (Pa. Super. 2017), *quoting Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000) (internal citations omitted; emphasis added).

As an initial matter, the trial court recommends that we find Appellant's sufficiency claim waived because he "lumped all" of his aggravated assault charges together into a general sufficiency challenge in his Rule 1925(b)

statement "and did not specify which of the 13 counts or which of the four versions of [a]ggravated [a]ssault he [wa]s contesting." Trial Court Opinion, 8/22/23, 14-17. In the event that we would not find the entire claim waived for lack of specificity in the Rule 1925(b), the court also recommends that we find the sufficiency challenge waived in part with respect to particular aggravated assault convictions. The court recommends that any sufficiency challenges to the aggravated assault counts under the Vehicle Code involving the act of driving under the influence should be waived because Appellant did not refer to those offenses in his Rule 1925(b) statement. *Id.* at 17. The court also suggests that Appellant waived his claim with respect to the aggravated assault convictions that only required an attempt to cause or a causing of bodily injury because the Rule 1925(b) statement only referenced *serious* bodily injury. *Id.*

Appellant identified his sufficiency claim as follows in his Rule 1925(b) statement:

I. Concerning the [a]ggravated [a]ssault charges, the court made an error of law when it denied [Appellant's] post-trial motion for Judgement of Acquittal Notwithstanding the Verdict:

(a) The [a]ggravated [a]ssault charges required [Appellant] to have caused serious bodily injury, and the evidence did not show, nor did the Commonwealth prove, that such injuries had occurred;

(b) The evidence showed that the injuries were caused by police vehicles attempting to strike [Appellant's] vehicle to stop him, and clearly were not attempts by

- 20 -

> [Appellant] to cause injury either intentionally or recklessly.

Appellant's Rule 1925(b) Statement, 7/14/23, § I.

In order to preserve a challenge to the sufficiency of the evidence, an appellant's Rule 1925(b) statement "must state with specificity the elements or verdicts for which the appellant alleges that the evidence was insufficient." *Commonwealth v. Cox*, 231 A.3d 1011, 1016 (Pa. Super. 2020). Here, we decline to find waiver because Appellant identified his claim adequately enough to allow the trial court to address the claim in its opinion. While Appellant was convicted of upwards of thirteen convictions that fall under the general auspices of "aggravated assault," his Rule 1925(b) statement noted that he was challenging the denial of his motion for judgment of acquittal and that motion made clear that he had been challenging the sufficiency of all his aggravated assault convictions. Post-Sentence Motion, 5/22/23, ¶ 12 ("[Appellant] was convicted of numerous counts of [a]ggravated [a]ssault, however the evidence and testimony at trial does not support his convictions *for any of them*.") (emphasis added). Within that motion, he addressed the failure of the evidence to support two types of elements of the aggravated assault convictions: the infliction of serious bodily injury for the counts that could be proven by the infliction of that type of injury and his intent to injure any of the troopers with the car he was driving. *Id.* at ¶¶ 15, 17-18. The Rule 1925(b) statement referred to the denial of the sufficiency claim in the

post-sentence motion and upon reviewing the motion and the short description of the theories for the claim in the Rule 1925(b) statement, the trial court was not left to guess at the appellate challenge to the sufficiency of the evidence that Appellant wished to raise. For this reason, we decline to accept the trial court's invitation to find the appellate claim waived, either entirely or in part.

With respect to Troopers Hari and Rehberg, Appellant was convicted of four counts of aggravated assault, one with respect to each of the victim troopers under 18 Pa.C.S. § 2702(a)(1) and one with respect to each of the victim troopers under 18 Pa.C.S. § 2702(a)(2). A defendant is guilty of aggravated assault under Section 2702(a)(1) if he "attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). A defendant is guilty of aggravated assault under Section 2702(a)(2) if he "attempts to cause or intentionally, knowingly or recklessly causes serious bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c) … while in performance of duty." 18 Pa.C.S. § 2702(a)(2). Subsection (c) includes state law enforcement officers among its enumerated officers for purposes of subsection (a). 18 Pa.C.S. § 2702(c)(18).

With respect to five of the troopers and two pairings of partner troopers (Trooper Hari, Trooper Rehberg, Trooper Doherty, Troopers Siekierka/Gilroy,

Troopers Nardelli/Gallagher, Trooper Rankovich, and Trooper Miller), Appellant was convicted of seven counts of aggravated assault under 18 Pa.C.S. § 2702(a)(3). A defendant is guilty of aggravated assault under Section 2702(a)(3) if he "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty." 18 Pa.C.S. § 2702(a)(3).

For purposes of the subsections under 18 Pa.C.S. § 2702(a), "serious bodily injury" is defined as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. "Bodily injury," for purposes of the definition of "serious bodily injury" and the subsection under 18 Pa.C.S. § 2702(a)(3), is defined as "impairment of physical condition or substantial pain." 18 Pa.C.S. § 2301.

With respect to Troopers Hari and Rehberg, Appellant was convicted of two counts of aggravated assault by vehicle while driving under the influence in violation of 75 Pa.C.S. § 3735.1(a). Pursuant to Section 3735.1(a), "[a]ny person who negligently causes serious bodily injury to another person as the result of a violation of section 3802 (relating to driving under influence of alcohol or controlled substance) and who is convicted of violating section 3802 commits a felony of the second degree when the violation is the cause of the injury." 75 Pa.C.S. § 3735.1(a). The Vehicle Code shares the same definition

of serious bodily injury as the Crimes Code. ***See*** 75 Pa.C.S. § 102 (defining "serious bodily injury" as "[a]ny bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of any bodily member or organ").

For the convictions under 18 Pa.C.S. § 2702(a)(1), 18 Pa.C.S. § 2702(a)(2), and 75 Pa.C.S. § 3735.1, Appellant alleges that the evidence failed to prove that Troopers Hari and Rehberg sustained serious bodily injury. Appellant's Brief at 26, 28-29. The trial testimony, however, alleged that both of these troopers sustained concussions, among other injuries, during their pursuit of Appellant. N.T. 12/15/22, 24-31. That injury supported the serious bodily injury element necessary for the aggravated assault counts concerning those troopers. ***See Commonwealth v. Santiago***, 294 A.3d 482, 486 (Pa. Super. 2023) (compiling cases and concluding that a concussion was serious bodily injury; holding that "concussing someone during an assault is sufficient evidence of 'serious bodily injury' under 18 Pa.C.S. § 2301, as a matter of law").

For all the aggravated assault counts, Appellant argues that the evidence failed to show that he caused any of the injuries to the troopers or that he acted with requisite *mens rea* for the offenses. As to his mental state during the pursuit, he asserts, "[t]here is no evidence that [he] had any intention whatsoever to harm any officer—and he certainly had the opportunity to do so." Appellant's Brief at 28; ***see also id.*** at 30 ("There is

no evidence that his intent was ever to harm an officer."). He alleges that his only intention at the time was to "get away." *Id.* at 28 He suggests that, to the extent the troopers sustained injuries, the injuries were caused by the troopers themselves and their actions cannot be attributed to him: "If the offers suffered injuries due to their own actions in slamming their cars into [Appellant's]—when such an action was a decision of the officers themselves—then it is hard to imagine how that intent can be transferred to [Appellant]." *Id.*

Having found that Troopers Hari and Rehberg sustained serious bodily injury, the evidence would support aggravated assault under Section 2702(a)(1) if Appellant caused that injury "intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life." 18 Pa.C.S. § 2702(a)(1). For purposes of Section 2702(a)(2), the evidence would be sufficient for aggravated assault if Appellant caused that serious bodily injury "intentionally, knowingly or recklessly" while the troopers were performing their duties as law enforcement officers. 18 Pa.C.S. § 2702(a)(2). Under the Vehicle Code, the evidence would be sufficient for aggravated assault while driving under the influence if it showed that Appellant negligently caused the serious bodily injury to Troopers Hari and Rehberg as a result of driving under the influence of alcohol or a controlled substance. 75 Pa.C.S. § 3735.1(a). Where Appellant does not contest the sufficiency of the evidence for driving under the influence, we would need to

determine whether the injuries to those troopers were negligently caused by Appellant. For all the troopers, including the ones who were not alleged to have sustained injury, we must resolve for purposes of Section 2702(a)(3) whether Appellant attempted to cause bodily injury to them.

"To prevail on a theory of recklessness in a prosecution for aggravated assault, the Commonwealth must show that the assailant's recklessness rose to the level of malice." **Commonwealth v. Miller**, 955 A.2d 419, 422 (Pa. Super. 2008). Malice, in this context, consists of a "wickedness of disposition, hardness of heart, cruelty, reckless of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured." **Id.** (citation omitted). A conviction based on malice is appropriate where there is evidence of "sustained recklessness by a driver in the face of an obvious risk of harm to his victims." **Commonwealth v. Kling**, 731 A.2d 145, 147 (Pa. Super. 1999) (emphasis omitted), **discussing Commonwealth v. Comer**, 716 AA.2d 593, 597 (Pa. 1998). Malice may be inferred in the instant case as the pursuit on September 14th started with Appellant ignoring the verbal commands of Trooper Siekierka before fleeing in his car at high speeds for the extended car chase because malice has been found to exist where an accident caused by a reckless motorist follows pleas from others to stop. **See Miller**, 955 A.2d at 423 (finding malice for aggravated assault where Miller "blatantly disregarded the officers request to pull over and stop prior to the crash," and noting that Miller's flight was

"evidence of his intent to continue his reckless driving in the face of obvious risk, since he had ample time to calculate the risks of driving at a high rate of speed through city streets while ignoring multiple traffic signals and signs"); *see also Kling*, 731 A.2d at 150 (noting, upon upholding an aggravated assault conviction, that King "had adequate time to calculate and reflect upon the consequences of his reckless conduct, thus rendering his choice to continue it malicious. … Appellant chose to play Russian roulette with the other drivers…").

For the counts that may be based on the causation of serious bodily injury, conduct is the cause of a result when "it is an antecedent but for which the result in question would not have occurred; and … the relationship between the conduct and result satisfies any additional causal requirements imposed by [the Crimes Code] or by the law defining the offense." 18 Pa.C.S. § 303(a). "To establish criminal causation, the Commonwealth must prove that the defendant's conduct was so directly and substantially linked to the actual result as to give rise to the imposition of criminal liability." *Commonwealth v. Nunn*, 947 A.2d 756, 760 (Pa. Super. 2008) (citations omitted).

With respect to the counts based on a theory of attempting to cause bodily injury, "[a] person commits an attempt when, with intent to commit a specific crime, he does any act which constitutes a substantial step toward the commission of that crime." 18 Pa.C.S. § 901(a). "[I]ntent may be inferred

from the actions of the defendant in light of all attendant circumstances." *Commonwealth v. Chance*, 458 A.2d 1371, 1374 (Pa. Super. 1983) (citations omitted).

Viewing the evidence in the light most favorable to the Commonwealth, the record does not support Appellant's contention that he merely had an intent to effectuate an escape from the various troopers. The pursuit included examples of him attempting to hit some of the troopers with his car. For instance, when the pursuit moved to Fawn Road and Trooper Miller initiated a pit maneuver, Appellant almost struck Troopers Miller and Siekierka, who were on foot, as he attempted to reverse out of a ditch and, immediately thereafter, he collided with Trooper Gilroy's patrol car. N.T. 12/14/22, 62-63, 101-02, 120-21, 178, 185-86; N.T. 12/16/22, 30-32. Even though the troopers on foot were able to move out of the pathway of Appellant's car, the collision with Trooper Gilroy's car and the missed striking of the two troopers on foot supported two of the seven aggravated assault charges under Section 2702(a)(3). *See, e.g., Commonwealth v. Fierst*, 620 A.2d 1196, 1202 (Pa. Super. 1993) (evidence sufficient for aggravated assault where Fierst drove his vehicle directly into a motorist path; victim avoided a collision with Fierst's car by swerving out of the way to avoid being hit); *Commonwealth v. Burns*, 568 A.2d 974, 977 (Pa. Super. 1990) (where Burns bore down on officers in his tractor-trailer and forced them off the road when they attempted to pass

him, and showed no intention of stopping, the evidence supported a finding of specific intent for purposes of aggravated assault).

We also agree with the trial court's assessment that Appellant was criminally liable for some of the counts of aggravated assault based on the troopers' maneuvers that resulted in collisions meant to stop his car. Trial Court Opinion, 8/22/23, 23 ("The fact that such maneuvers were attempted does not take away from the fact that it was Defendant's intentional and reckless conduct, felony [f]leeing and [e]luding, and flight to avoid apprehension that necessitated the maneuvers and was responsible for the injuries sustained by the troopers."). With respect to the serious bodily injuries sustained by Troopers Hari and Rehberg we conclude that Appellant recklessly caused the troopers' injuries and that causation supported the two counts each under Sections 2702(a)(1), 2702(a)(2), 2702(3), and 75 Pa.C.S. § 3735.1(a).

With respect to the first part of the two-part causation test in 18 Pa.C.S. § 303(a)(1), we conclude that Appellant's conduct was the operative cause of the injuries sustained by Troopers Hari and Rehberg. Appellant's high-speed flight in his car was the operative link in a chain of events which resulted in the troopers' injuries. That the troopers would embark on the evasive maneuvers to stop Appellant's car were not an unnatural or obscure consequence of Appellant's actions. The troopers' actions were necessary to stop Appellant from posing a deadly risk to bystanders as he continued his

reckless flight at high speed, and we would expect the troopers to be duty-bound take that action despite the obvious risks of harm to themselves which ended up resulting in their injuries. *See Commonwealth v. Lang*, 426 A.2d 691, 696 (Pa. Super. 1981) (finding that a police officer's death during a high-speed pursuit of a fleeing defendant on a motorcycle was a foreseeable and direct consequence of Lang's conduct and "not a fortuitous or coincidental event"). In these circumstances, it was reasonable for the jury to conclude that the injuries of Troopers Hari and Rehberg were the direct result of Appellant's reckless conduct, and this supported the most serious aggravated assault counts. *See Commonwealth v. Mucci*, 143 A.3d 399, (Pa. Super. 2016) (finding no merit to Mucci's suggestion that the evidence failed to prove he caused injury to an officer since the officer admitted that he twice took the initiative and "rammed into" Mucci's vehicle; holding evidence sufficient for aggravated assault under Section 2702(a)(3) where the officer was acting in accordance with his duty in attempting to stop Mucci's fleeing vehicle regardless of whether the officer "was injured when he 'rammed into [Mucci's] vehicle, or vice versa'").

The remaining aggravated assault counts include the Section 2702(a)(3) counts with respect to Trooper Doherty, Troopers Nardelli/Gallagher, and Trooper Rankovich. For these counts,

> The Commonwealth need not establish that the victim actually suffered bodily injury; rather, it is sufficient to support a conviction if the Commonwealth establishes an attempt to inflict

bodily injury. This intent may be shown by circumstances which reasonably suggest that a defendant intended to cause injury.

…

… To show an "attempt" to inflict bodily injury, it must be shown that the actor had a specific intent to cause bodily injury[.] A person acts intentionally with respect to a material element of an offense if it is his conscious object to engage in conduct of that nature or to cause such a result[.]

***Commonwealth v. Hatch***, --- A.3d ----, 2024 WL 1821797 (Pa. Super., filed Apr. 26, 2024) (citation omitted).

When the pursuit reached Henry's Crossing Road, Trooper Doherty was traveling in a northbound lane. N.T. 12/15/22, 95. Appellant, while travelling in the southbound lane, passed a bystander's car and entered the lane in which Trooper Doherty was traveling. *Id.* at 94-95. Trooper Doherty stopped her car and swerved out of the way Appellant's oncoming car. *Id.* at 94-95, 98. Trooper Doherty then attempted a pit maneuver on Appellant's car but was unsuccessful because her patrol car rammed the front of Appellant's car rather than its back. N.T. 12/15/22, 93-94, 97-98. The move did not stop Appellant's car and instead disabled Trooper Doherty's car by damaging its axle. *Id.* at 96-99. Trooper Doherty did not sustain any injuries because of the collision. *Id.* at 96.

The pit maneuver by Trooper Doherty and the resulting collision could not support a Section 2702(a)(3) conviction because Trooper Doherty did not sustain any bodily injury and Appellant did not act intentionally with respect

to the collision initiated by Trooper Doherty. The initial driving into Trooper Doherty's traffic lane, on the other hand, provides support for the Section 2702(a)(3) conviction. Accepting the earlier testimony that Appellant drove at Troopers Miller and Siekierka and Trooper Gilroy's patrol car, the jury could infer that Appellant was attempting to injure the trooper to achieve his escape. At a minimum, Appellant's driving at Trooper Doherty in the wrong direction of the trooper's lane of traffic supports aggravated assault under Section 2702(a)(3) as it proves that Appellant was attempting – at a minimum – to cause bodily injury to the trooper even though the trooper evaded that injury by swerving out of the way, after he had earlier drove at other troopers to escape from them. The earlier effort to drive at other troopers in the pursuit supports the *mens rea* for the offense against Trooper Doherty.

Troopers Nardelli and Gallagher positioned their car in a road to bring the pursuit to a stop and Trooper Rehberg's vehicle ended up striking Appellant's car, knocking it into the car of Troopers Nardelli and Gallagher. N.T. 12/15/22, 60-65, 74, 79-80, 86. Trooper Gallagher was outside the patrol car, away from it by 25 to 30 yards, at the time of impact, but Trooper Nardelli was inside the car and escaped serious injury. *Id.* at 74 (Trooper Nardelli: "I was thrown around within the vehicle a little bit; so I did get checked out by EMS. They ultimately cleared me, after giving me some brief medication."), 79 (reference to Trooper Gallagher's position at the time of the impact).

Properly viewing the involvement of Troopers Nardelli and Gallagher in the pursuit, we are unable to find sufficient evidence to support a Section 2702(a)(3) conviction in relation to them. Here, Appellant did not drive into the troopers' car but rather was knocked into their car when Trooper's Rehberg's car struck his car. In this circumstance, we are unable to conclude that Appellant attempted to cause bodily injury to Troopers Nardelli and Gallagher or that he intentionally or knowingly caused bodily injury to them. *Fierst*, 620 A.2d at 1202 ("Section 301 of the Pennsylvania Crimes Code does not impose criminal liability on a person for an involuntary act."); 18 Pa.C.S. § 301(a) ("A person is not guilty of an offense unless is liability is based on conduct which includes a voluntary act or the omission to perform an act of which he is physically capable.").

Trooper Rankovich joined the pursuit just prior to Trooper Doherty's car being disabled. N.T. 12/15/22, 112-13. Shortly thereafter, Trooper Rankovich attempted to hit Appellant's car "head on" as Appellant had come into the same traffic lane in which Trooper Rankovich was travelling. *Id.* at 113, *see also id.* at 130 ("Q. It looks like he's not -- he's actually slowing down at that point as you come towards him; is that an accurate assessment? A. Yeah."). After they collided, Appellant put his car into reverse, backed up, and went around Trooper Rankovich, who was then out of his patrol car. *Id.* After Troopers Hari and Rehberg attempted to stop Appellant with a collision, Trooper Rankovich, back in his patrol car, saw Appellant's car coming at him

in reverse. *Id.* at 114. Trooper Rankovich rammed the back of Appellant's car, disabling it. *Id.* at 114, 125. Trooper Rankovich then assisted with extracting Appellant from his car and placing him in handcuffs. *Id.* at 118, 127. Trooper Rankovich sustained a cut to one of his fingers and had "some knee pain" because of the incident. *Id.* at 123.

Trooper Rankovich suffered some bodily injury from the incident but, unlike in the other scenarios we have assessed in the course of the car chase as a whole, we find the evidence insufficient to prove aggravated assault under Section 2702(a)(3) with respect to that trooper. Trooper Rankovich collided with the front and the rear of Appellant's car. In both instances, Trooper Rankovich's testimony revealed that he was initiating the contact, and, for the head-to-head collision, he recalled that Appellant was decelerating prior to the collision suggesting that, at least in that instance, Appellant was not trying to cause bodily injury to the trooper. As to the collision with the rear of Appellant's car, it was a reasonable inference that Appellant was merely moving in reverse at that time to move around the troopers' efforts to box in his car rather than to offensively strike Trooper Rankovich's oncoming car. In any event, we are unable to conclude that Appellant attempted to cause or intentionally or knowingly caused bodily injury to Trooper Rankovich. We thus find the evidence insufficient for the aggravated assault conviction with respect to that trooper.

Viewing the evidence in the light most favorable to the Commonwealth, we find that the evidence was sufficient to sustain all of Appellant's aggravated assault convictions except for counts 24 and 25 of the amended bills of information which included the convictions under 18 Pa.C.S. § 2702(a)(3) that involved Troopers Nardelli, Gallagher, and Rankovich. Because our reversals of the convictions for counts 24 and 25 upset the trial court's sentencing scheme, we vacate all of Appellant's sentences and remand for resentencing on the remaining convictions that we have affirmed. **See Commonwealth v. Steele**, 234 A.3d 840, 848 (Pa. Super. 2020) (remanding for resentencing on all remaining convictions where reversal of conviction on sufficiency grounds upset the trial court's sentencing scheme "to give the trial court the opportunity to restructure its sentencing scheme").

Convictions reversed at Counts 24 (aggravated assault under 18 Pa.C.S. § 2702(a)(3) with respect to Troopers Robert Nardelli and Thomas Gallagher's vehicle) and Count 25 (aggravated assault under 18 Pa.C.S. § 2702(a)(3) with respect to Trooper Alexander Rankovich's vehicle). Remaining convictions affirmed. Judgments of sentence vacated. Remanded for resentencing. Jurisdiction relinquished.

Judge Stabile joins the memorandum.

Judge McLaughlin concurs in the result.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary


Date:  7/17/2024